945 F.2d 509
 1991 Copr.L.Dec. P 26,804, 20 U.S.P.Q.2d 1122,
19 Media L. Rep. 1302
 KEY PUBLICATIONS, INC., Plaintiff-Appellee,
v.
CHINATOWN TODAY PUBLISHING ENTERPRISES, INC., Galore
Enterprises, Inc., Cyprus Development, Inc. and Ma
Kam Yee, Defendants,
Galore Enterprises, Inc. and Ma Kam Yee, Defendants-Appellants.
 No. 1681, Docket 91-7235.
 United States Court of Appeals,
Second Circuit.
 Argued July 24, 1991.
Decided Sept. 23, 1991.
As Amended Oct. 1, 1991.
 
 Dianan Jia, New York City (Yuen & Yuen, of counsel), for defendants-appellants.
 Amy B. Goldsmith, New York City (Gottlieb, Rackman & Reisman, of counsel), for plaintiff-appellee.
 Before WINTER, ALTIMARI and MAHONEY, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This appeal concerns the scope of copyright protection provided a classified telephone directory published by appellee Key Publications, Inc. ("Key"). Appellants Galore Enterprises, Inc. and Ma Kam Yee ("Galore" and "Ma"), appeal from Judge Ward's holding that their publication, the 1990 Chinese American-Life Guide ("Galore Directory"), infringed Key's copyright in the 1989-90 Chinese Business Guide & Directory ("1989-90 Key Directory"). We hold that the 1989-90 Key Directory is subject to copyright protection, but that the Galore Directory does not infringe Key's copyright. We therefore reverse.
 
 BACKGROUND
 
 2
 Since 1984, Key has published an annual classified business directory for New York City's Chinese-American community. Each directory consists of a white pages section and a yellow pages section. The white pages include maps, articles, and information about government and private services printed in both English and Chinese. Accounting for approximately two-thirds of each directory, the yellow pages contain telephone numbers and addresses for numerous businesses located in Chinatown, and more recently, businesses located in other parts of the New York metropolitan area, Boston, and Philadelphia. Key has registered each of its six directories with the United States Copyright Office.
 
 
 3
 This appeal specifically concerns the yellow pages listings contained in the 1989-90 Key Directory. Key's president, Lynn Wang, is responsible for assembling the Key directories. Beginning in 1983, Ms. Wang collected business cards from doctors and lawyers associated with the Chinese-American community, banks that did business in the Chinese-American community, and other establishments she thought ought to be included in the yellow pages section of the Directory. Additionally, a "modest percentage," in the words of the district court, of the listings in the 1984 Key Directory were copied from another compilation, the 1981 Chinese American Restaurant Directory ("Restaurant Directory"). Some of the copied listings were presumably included in later directories, including the 1989-90 Key Directory. The information collected in the 1989-90 Key Directory was sorted by type of business; each listing is placed in one of over 260 different categories; and each of the approximately 9000 listings consists of an English and a Chinese name, an address, and a telephone number. About 15,000 copies of the 1989-90 Key Directory have been distributed to businesses and individuals in the New York Chinese-American community.
 
 
 4
 Ma is a fifty-percent stockholder of Galore, which in 1990 published the Galore Directory, also a classified directory for the New York Chinese-American Community. The yellow pages of the Galore Directory contain approximately 2000 listings divided among twenty-eight different categories. Like the 1989-90 Key Directory, business establishments of interest to the New York Chinese-American community are listed in the Galore Directory. About seventy-five percent, or 1500, of the businesses listed in the Galore Directory are also listed in the 1989-90 Key Directory.
 
 
 5
 On April 4, 1990, Key brought suit against Ma and Chinatown Today Publishing Enterprises, Inc. (the publisher of the Galore Directory and solely owned by Ma), charging that the Galore Directory infringed Key's copyright in the 1989-90 Key Directory, and seeking injunctive relief, damages, and attorney's fees. On October 30, 1990, after six months of discovery, Key requested leave to amend its complaint to add two new defendants, Galore and Cyprus Development, Inc. (a corporation in which Ma is a fifty-percent stockholder). This motion was granted on November 30, 1990. In the meantime, on November 21, 1990, Key moved for a preliminary injunction to prevent then-defendants Chinatown Today and Ma from printing and distributing the 1991 version of the Galore Directory, which was similar to the allegedly infringing 1990 Galore Directory. Upon agreement of the parties, this motion was consolidated with a trial on the merits.
 
 
 6
 At the conclusion of the bench trial, Judge Ward rendered an oral decision finding that the Galore Directory infringed Key's copyright in the 1989-90 Key Directory. On February 11, 1991, the district court dismissed the complaint against Chinatown Today and Cyprus Development, and awarded Key statutory damages against the remaining defendants, Galore and Ma, in the amount of $15,000, pursuant to 17 U.S.C. § 504(c)(2) (1988), and full costs and attorney's fees, pursuant to 17 U.S.C. § 505 (1988). Additionally, Judge Ward permanently enjoined Galore and Ma from further infringement of Key's copyright, pursuant to 17 U.S.C. § 502(a) (1988), and ordered all copies of the 1990 Galore Directory, as well as all documents and printing plates relating to the listings section of that directory, delivered to the court for destruction, pursuant to 17 U.S.C. § 503(b) (1988). Because full relief could be granted on the finding of infringement of the 1989-90 Key Directory, he found it unnecessary to address the infringement claims regarding early Key Directories.
 
 DISCUSSION
 
 7
 We address two questions on this appeal. First, did the district court correctly conclude that the 1989-90 Key Directory is entitled to a copyright? And, if so, does the Galore Directory infringe that copyright? We answer the first in the affirmative, the second in the negative.
 
 1. Copyrightability
 
 8
 The 1989-90 Key Directory is a factual compilation--a selection of business names, addresses, and phone numbers, separated into descriptive categories, e.g., "ART SUPPLIES."
 
 
 9
 Facts, without more, are not copyrightable. 17 U.S.C. § 102(b) (1988) ("[i]n no case does copyright protection for an original work of authorship extend to any ... discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work"). See Feist Publications, Inc. v. Rural Tel. Serv. Co., --- U.S. ----, 111 S.Ct. 1282, 1288, 1293, 113 L.Ed.2d 358 (1991) ("[Section] 102(b) is universally understood to prohibit any copyright in facts."); Financial Info., Inc. v. Moody's Investors Serv., Inc., 808 F.2d 204, 207 (2d Cir.1986), cert. denied, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987). Factual compilations, however, may be copyrighted. 17 U.S.C. §§ 102, 103 (1988). See, e.g., Feist, 111 S.Ct. at 1289; Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 547, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985). Some view these two principles as a paradox in that a compilation comprised of facts not entitled by themselves to copyright protection may support a valid copyright. See Feist, 111 S.Ct. at 1287 (observing that "[t]here is an undeniable tension between these two propositions"); Financial Info., Inc. v. Moody's Investors Serv., Inc., 751 F.2d 501, 505 (2d Cir.1984) ("the law of copyrights defies the laws of logic ... since it 'affords to the summation of one hundred or one million [individual facts and their unadorned expression] a significant measure of protection' while affording none to the facts themselves") (quoting Robert C. Denicola, Copyright in Collections of Facts: A Theory for the Protection of Nonfiction Literary Works, 81 Colum.L.Rev. 516, 527 (1981)).
 
 
 10
 Paradox or no, Section 101 of the Copyright Act of 1976, Pub.L. No. 94-553, 90 Stat. 2544, defines a copyrightable compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101 (1988). This language suggests three requirements for a compilation to qualify for copyright protection: (1) the collection and assembly of preexisting data; (2) the selection, coordination, or arrangement of that data; and (3) a resulting work that is original, by virtue of the selection, coordination, or arrangement of the data contained in the work. See Feist, 111 S.Ct. at 1293. There is thus more to a copyrightable compilation than the simple collection of uncopyrightable facts. Such a compilation must "feature[ ] an original selection or arrangement of [those] facts." Id. at 1290.
 
 
 11
 This requirement of originality, a prerequisite to any valid copyright, see 17 U.S.C. § 102(a) (1988) ("[c]opyright protection subsists ... in original works of authorship"), is not particularly rigorous. Simply stated, original means not copied, and exhibiting a minimal amount of creativity. See 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 2.01 (1991). In practice, the requirement of originality has become " 'little more than a prohibition of actual copying.' " Denicola, supra at 520-21 (quoting Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99, 103 (2d Cir.1951)); see also Feist, 111 S.Ct. at 1287. Moreover, for purposes of copyright, originality is not synonymous with novelty. Similarity to prior works will not, in and of itself, affect the validity of a particular work's copyright. 1 Nimmer & Nimmer, supra, at § 2.01[B].
 
 
 12
 Because every compilation, by definition, satisfies the first requirement of a collection of data, whether the 1989-90 Key Directory can be copyrighted will necessarily turn upon the second and third requirements. See Feist, 111 S.Ct. at 1294. Thus, only if the selection, coordination, or arrangement of listings in the directory is sufficiently original or creative will the directory be entitled to a copyright.
 
 
 13
 Selection implies the exercise of judgment in choosing which facts from a given body of data to include in a compilation. See William Patry, Copyright in Compilations of Facts (or Why the "White Pages" are not Copyrightable), 12 Comm. & L.Dec.1990, at 57; see also Eckes v. Card Prices Update, 736 F.2d 859, 862-63 (2d Cir.1984) (selectivity exercised in choosing 5000 "premium" cards from among 18,000 baseball cards). In assembling the directory, Ms. Wang had to select from a multitude of businesses in New York and elsewhere those of greatest interest to her audience--the New York City Chinese-American community.
 
 
 14
 While Galore and Ma argue that Ms. Wang "slavishly" included every business about which she had information in the Key Directory, the district court held that there was adequate originality in her selection to entitle the directory to copyright protection. The record supports that conclusion. Ms. Wang testified that she excluded from the directory those businesses she did not think would remain open for very long, such as certain insurance brokers, take-out restaurants, and traditional Chinese medical practitioners. This testimony alone indicates thought and creativity in the selection of businesses included in the 1989-90 Key Directory. See Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting Sys., Inc., 672 F.2d 1095, 1103 (2d Cir.) (protection is available for "skill and creativity in selecting and assembling an original arrangement ... even if no new material is added"), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); Dow Jones & Co. v. Board of Trade, 546 F.Supp. 113, 116 (S.D.N.Y.1982) (selection, as evidenced by determination of which stocks to include in a compilation, is protectable expression).
 
 
 15
 Galore and Ma, however, note the evidence that some of the listings included in the 1984 Key Directory (and later Key Directories) had been printed in a prior classified directory, the Restaurant Directory. They argue that the existence of such evidence should preclude a finding of originality in the selection of businesses for inclusion in the 1989-90 Key Directory. We disagree. Although the district judge found some overlap between the restaurant listings in the 1984 Key Directory and the Restaurant Directory, he concluded that, on the whole, the two directories differed substantially. The Restaurant Directory mainly lists restaurants; the scope of the 1984 Key Directory was significantly broader. And the 1989-90 Key Directory, which copied listings contained in the 1984 Key Directory, is itself considerably larger than the 1984 directory. It follows that the selection contained in the 1989-90 Key Directory was not copied wholesale from the Restaurant Directory. We therefore conclude that the Key Directory contains an original selection of businesses in its classified listings.
 
 
 16
 In addition, the arrangement of the Key Directory is original within the meaning of the copyright laws. Arrangement "refers to the ordering or grouping of data into lists or categories that go beyond the mere mechanical grouping of data as such, for example, the alphabetical, chronological, or sequential listings of data." Copyright Office, Guidelines for Registration of Fact-Based Compilations 1 (Rev. Oct. 11, 1989), quoted in Patry, supra, at 60. The 1989-90 Key Directory contains over 9000 listings divided among approximately 260 different categories. The format of the Key Directory is common to most classified directories, and particular categories have, of course, been used in other classified directories, e.g., "ACCOUNTANTS," "BRIDAL SHOPS," and "SHOE STORES." Nevertheless, some of the categories are of particular interest to the Chinese-American community and not common to yellow pages, e.g., "BEAN CURD & BEAN SPROUT SHOPS." And there is no evidence that the arrangement and designation of categories was copied from, or is substantially similar to, another directory. The lack of novelty is, as noted, not a bar to copyright protection.
 
 
 17
 Moreover, the individual categories chosen are irrelevant to our inquiry. Rather, we are concerned with whether the arrangement of the Key Directory, viewed in the aggregate, is original. We believe it is. The arrangement is in no sense mechanical, but involved creativity on the part of Ms. Wang in deciding which categories to include and under what name. Cf. Feist, 111 S.Ct. at 1297 (finding that "there is nothing remotely creative about arranging names alphabetically in a white pages directory. It is an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a matter of course."). This task entailed the de minimis thought needed to withstand the originality requirement.
 
 
 18
 In sum, we agree with the district court that Key's copyright in the 1989-90 Key Directory is valid.
 
 2. Infringement
 
 19
 There are two elements to every claim of copyright infringement: (1) possession of a valid copyright, and (2) copying of those elements of the work that are copyrightable. Feist, 111 S.Ct. at 1296. As discussed above, the first element is satisfied here, and thus the question of infringement turns on the second element.
 
 
 20
 Whether a compilation has been infringed requires a somewhat more refined analysis than is applied in a case involving a wholly original work. The individual components of a compilation are generally within the public domain and thus available for copying. Indeed, one might interpret Feist to permit a finding of infringement only when a subsequent compiler produces an exact replica of a copyrighted compilation, 111 S.Ct. at 1289 (no infringement absent the "same selection and arrangement" of facts).
 
 
 21
 We have not read Feist in such a broad and self-defeating fashion. See Kregos v. Associated Press, 937 F.2d 700, 703-04 (2d Cir.1991) (requiring minimal level of creativity as well as independent selection and arrangement for compilation to enjoy copyright entitlement). Such a reading of Feist would allow subsequent compilers to avoid infringement suits simply by adding a single fact to a verbatim copy of the copyrighted compilation, or omitting in the copy a single fact contained in the copyrighted compilation. See Harper & Row Publishers, 471 U.S. at 583 n. 5, 105 S.Ct. at 2242 n. 5 (Brennan, J., dissenting). Such a result would render the copyright of a compilation meaningless. While, as the Court pointed out in Feist, the "copyright in a factual compilation is thin," 111 S.Ct. at 1289, we do not believe it is anorexic.
 
 
 22
 Although the test for infringement of original works and compilations is one of "substantial similarity," see, e.g., Business Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 402 (2d Cir.1989); Eckes, 736 F.2d at 863, the appropriate inquiry is narrowed in the case of a compilation. As noted, the components of a compilation are generally in the public domain, and a finding of substantial similarity or even absolute identity as to matters in the public domain will not suffice to prove infringement. What must be shown is substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed compilation. See Kregos, 937 F.2d at 709 (author of compilation "entitled to protection only against infringement of the protectable features of his form").
 
 
 23
 Broader protection would necessarily preclude competitors from using elements in the public domain and impede rather than encourage originality and creativity in future compilations. Broader protection would thus thwart the underlying goals of copyright protection. This limitation is codified in Section 103 of the Copyright Act, which provides that "[t]he copyright in a compilation ... extends only to the material contributed by the author of such work, as distinguished from the preexisting material." 17 U.S.C. § 103(b) (1988).
 
 
 24
 Our discussion of the copyrightability of the 1989-90 Key Directory thus provides the framework for our analysis of the claim of infringement. The elements that afford copyrightability to the 1989-90 Key Directory are, first, the arrangement of over 260 categories under which businesses are catalogued and, second, the selection of the 9000 businesses so categorized. If the Galore Directory is substantially similar to the 1989-90 Key Directory with regard to that arrangement of categories or that selection of businesses, then a finding of infringement can be supported. If it is not, then the Galore Directory has merely appropriated elements in the public domain. See Business Trends, 887 F.2d at 402; see generally 3 Nimmer & Nimmer, supra, at § 13.03.
 
 
 25
 With regard to the arrangement of listings in the Galore Directory, it can hardly be described as even remotely similar to the arrangement utilized by the 1989-90 Key Directory. The Galore Directory contains only twenty-eight different categories, set out in APPENDIX A. The 1989-90 Key Directory contains over 260 different categories, set out in APPENDIX B. Not only is the magnitude of the difference in the number of categories enormous, but only three of the twenty-eight categories in the Galore Directory duplicate categories in the 1989-90 Key Directory. A facial examination thus readily reveals great dissimilarity.
 
 
 26
 Of course, many of the duplicated listings are contained in similar categories in both directories (e.g., William King Ng is listed in the "attorneys and accountants" category of the Galore Directory, and in the "attorney and law offices" category of the 1989-90 Key Directory) but this does not alter our conclusion of dissimilarity. The arrangement of categories in a classified directory is to be distinguished from the placement of a listing in a particular category. Placing listings within categories is the sort of mechanical task that does not merit copyright protection. We thus find that, as a matter of law, the arrangement of categories in the Galore Directory is not substantially similar to the arrangement of the categories in the 1989-90 Key Directory. Cf. Bellsouth Advertising & Publishing Corp. v. Donnelly Info. Publishing, Inc., 933 F.2d 952, 958-60 (11th Cir.1991) (finding infringement of a copyrighted yellow pages directory where the infringing directory "substantially appropriated" the overall format of the copyrighted directory).
 
 
 27
 Of course, as noted supra, infringement may also be found if there is a substantial similarity in the selection of businesses listed in the two publications. The district court found that seventy-five percent of the 2000 listings, 1500 listings, included in the Galore Directory duplicated listings contained in the 1989-90 Key Directory. The district court also found that the 1500 duplicate listings resulted from deliberate copying by Galore and Ma.
 
 
 28
 However, the 1989-90 Key Directory contains over 9000 listings. Thus, just seventeen percent (1500/9000) of the listings in the 1989-90 Key Directory were also printed in the Galore Directory. Moreover, the listings copied do not come primarily from any particular portion of the 1989-90 Key Directory; no category of the 1989-90 Key Directory containing more than a few entries is duplicated in total in the Galore Directory. For example, of the 124 accountants listed in the 1989-90 Key Directory, only forty-two are also listed in the Galore Directory. Finally, at least twenty-five percent of the listings in the Galore Directory are not in the 1989-90 Key Directory.
 
 
 29
 We conclude that, as a matter of law, the Galore Directory does not infringe the 1989-90 Key Directory. There are a finite number of businesses that are of special interest to a sizeable segment of the New York Chinese-American community, and some substantial overlap among classified business directories compiled for that community is inevitable. The key issue is not whether there is overlap or copying but whether the organizing principle guiding the selection of businesses for the two publications is in fact substantially similar. Having prevailed on the argument that its selection of businesses for the 1989-90 Key Directory was original and creative and thus entitled to copyright protection notwithstanding some duplication with the earlier Restaurant Directory, Key is in no position to extend the scope of its copyright to protect itself from later works that embody significantly different principles of selection.
 
 
 30
 The selection of businesses for the Galore Directory is significantly different from the 1989-90 Key Directory. The Galore Directory does not contain 7500 of the 9000 listings in the Key Directory. No substantial categories and their listings have been taken wholesale from the Key Directory. More than 500 listings in the Galore Directory are not in the Key Directory. The organizing principles of the two directories are thus not substantially similar. Indeed, any consumer faced with the two directories would instantly realize that they are quite different.
 
 
 31
 To hold otherwise would bring back long discarded notions of copyright law. Twenty-five years ago we abandoned the "sweat of the brow" doctrine, which rewarded compilers for their efforts in collecting facts with a de facto copyright to those facts. Rosemont Enters., Inc. v. Random House, Inc., 366 F.2d 303, 309-10 (2d Cir.1966) (rejecting the view that "an author is absolutely precluded from saving time and effort by referring to and relying upon prior published material"), cert. denied, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967); see Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 979 (2d Cir.), cert. denied, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980); see also Feist, 111 S.Ct. at 1291-93 ("The 'sweat of the brow' doctrine had numerous flaws, the most glaring being that it extended copyright protection in a compilation beyond selection and arrangement--the compiler's original contributions--to the facts themselves.").
 
 
 32
 Because the principles of selection determining the listings in the two directories in the instant matter are quite different, a finding of infringement would essentially be granting Key a copyright monopoly on the use of each name and address listed in the 1989-90 Key Directory. Nor does the fact that Galore and Ma may have copied the names and addresses it selected from the 1989-90 Key Directory support a finding of infringement so long as the principles guiding that selection differ from those of the copied work. Compilers operating under different principles of selection are not obligated to repeat factual research already undertaken and completed by others. See Feist, 111 S.Ct. at 1289 ("Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement."). For example, an author seeking to publish a compilation of important dates or events of the 1940's would be permitted to copy facts recorded in an earlier compilation of important dates or events of World War II. As Rosemont Enterprises stated, "It is just such wasted effort that the proscription against the copyright of ideas and facts ... [is] designed to prevent." 366 F.2d at 310.
 
 
 33
 Eckes v. Card Prices Update, 736 F.2d 859 (2d Cir.1984), nicely illustrates the rule. In that case, we held that a guide to baseball cards infringed a previously published guide, even though the copyrighted guide listed over 18,000 cards and the infringing guide listed only 5000 cards. Essential to our finding of infringement was the fact that the 5000 listings duplicated in the infringing guide were the same 5000 designated as "premium" cards by the copyrighted guide. Id. at 863. The copyrighted guide selected within the 18,000 a designated group of 5000 that it described as "premium" cards. The infringing guide then copied that portion wholesale based upon the same principle of selection. If the Galore Directory had exactly duplicated a substantial designated portion of the 1989-90 Key Directory--for example, all its listings of professionals such as medical doctors, lawyers, accountants, engineers and architects, an infringement action would succeed. However, there is no claim that such duplication occurred here.
 
 
 34
 The district court found it unnecessary to decide whether the Galore Directory infringed prior copyrighted Key Directories because full relief would follow from infringement of the 1989-90 Key Directory. For different reasons, we need address those questions only briefly. Key does not suggest that either the arrangement of categories or selection of businesses in the Galore Directory is more similar to those in prior Key Directories than it is to the 1989-90 Key Directory. Our prior discussion thus suffices to dispose of Key's infringement claims regarding prior directories.
 
 Reversed.APPENDIX A
 
 35
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLEAPPENDIX B
 
 
 36
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLENOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE